**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

| | | |
|---|---|---|
| RB, a minor, by his parents, next friends and natural guardians, JOE BAKER and PAM BAKER, and JOE BAKER and PAM BAKER, individually, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| CLAIBORNE COUNTY, TENNESSEE, a governmental entity; BOB BROOKS, Sheriff, Individually; KENNETH JOSEPH OCHOA, JR., Deputy Sheriff, Individually; CITY OF TAZEWELL, TENNESSEE, a governmental entity; JEREMY MYERS, Chief of Police, Individually; COLBY WERNER, Officer, Individually; and JOHN DOES 1-5, Individually, | ) ) ) ) ) ) ) ) ) ) ) ) | Jury of Twelve Demanded |
| | ) | |
| Defendants. | ) | |

---

### COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

---

**COMES** RB, a minor, by his parents, next friends and natural guardians, Joe Baker and Pam Baker, and Joe Baker and Pam Baker, Individually, ("Plaintiffs"), by their attorney, and sues the Defendants: Claiborne County, Tennessee, a governmental entity; Sheriff Bob Brooks, Individually; Deputy Kenneth Joseph Ochoa, Jr., Individually; the City of Tazewell, Tennessee, a governmental entity; Chief Jeremy Myers, Individually; Officer Colby Werner, Officer, Individually; and John Does 1-5, Individually ("Doe Defendants") (collectively, "Defendants").

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    NATURE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.   JURISDICTION AND VENUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

III.  PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      A.    Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

      B.    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

IV.   FACTUAL ALLEGATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

V.    WAIVER OF IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

VI.   CLAIMS FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

      COUNT ONE – EXCESSIVE FORCE – PHYSICALLY ASSAULTING RB
      (Against Dep. Ochoa Only) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

      COUNT TWO – EXCESSIVE FORCE – PHYSICALLY ASSAULTING RB
      (Against Officer Werner Only) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

      COUNT THREE – FAILURE TO TRAIN AND SUPERVISE (Against the
      County and Sheriff Brooks, Individually) . . . . . . . . . . . . . . . . . . . . . . . . .  17

      COUNT FOUR – FAILURE TO TRAIN AND SUPERVISE (Against the
      City and Chief Myers, Individually) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

      COUNT FIVE – FAILURE TO PROTECT (Against Dep. Ochoa,
      Individually; Officer Werner, Individually; and Doe Defendants,
      Individually) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

      COUNT SIX – BATTERY (Against the County; Dep. Ochoa, Individually;
      the City; Officer Werner, Individually; and Does 1-5, Individually) . . . . . . .  29

      COUNT SEVEN – NEGLIGENCE (Against the County; Sheriff Brooks,
      Individually; Dep. Ochoa, Individually; the City; Chief Myers,
      Individually; and Officer Werner Individually) . . . . . . . . . . . . . . . . . . . . . . .  29

-ii-

COUNT EIGHT – INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS (Against Dep. Ochoa and Officer Werner, Individually) . . . . . .  31

COUNT NINE – LOSS OF SOCIETY AND CONSORTIUM
(Joe and Pam Baker, Individually, Against all Defendants). . . . . . . . . . . .  32

VII.   JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

VIII.  PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

-iii-

# I. NATURE OF ACTION

1.      On November 7, 2020, 14-year old RB was spending the night at a friend's house after a birthday get together. RB and a friend decided to take RB's ATV down the road to a market for some snacks. A Claiborne County Sheriff's deputy spotted them while out on patrol and attempted a traffic stop. RB, scared and trying to get back to his friend's house, didn't stop. A few minutes later, RB was face-down in the dirt, his hands and arms pinned beneath him, being kneed in the back and punched in the head and face repeatedly by Claiborne County Deputy Kenneth Joseph Ochoa, Jr. ("Dep. Ochoa") and kneed and kicked in the head and torso by Tazewell Officer Colby Werner ("Officer Werner").

2.      Dep. Ochoa – 35-years old and 235 pounds – even bragged on a body camera video about punching the 14-year old RB, stating to his fellow deputies and officers, "I fucking clocked him right in his fucking face!"

3.      Knocked unconscious, suffering a concussion, facial trauma, a blow-out fracture of the left orbital wall, a bloody nose, radiating head and facial pain, and daily pounding headaches, the now 15-year old RB suffers from nightmares, insomnia, and is burdened with ongoing anxiety. As a result of the traumatic incident, RB has been treated by a maxillofacial surgeon for the facial fractures, a child neurologist for the head trauma, an ear nose and throat doctor ("ENT"), also for the facial fractures, an ophthalmologist for vision problems due to the head injury and severe injury to his left eye, a dentist for teeth-grinding caused by the injury to his jaws, a therapist for PTSD, an occupational therapist, a physical therapist, and a speech therapist. RB's education

-1-

was also significantly affected by the incident, as he had to home-schooled after the incident, as the injuries he received not only caused PTSD, but also resulted in cognitive problems, including comprehension difficulties and short-term memory loss, and alteration of his curriculum.

4. Defendants, acting under color of law, deprived RB of his constitutional rights under the Fourth and Fourteenth Amendments and caused him injuries by violating state common law. By this action, brought under 42 U.S.C. § 1983 and Tennessee law, Plaintiffs make the following claims:

- Count One – 42 U.S.C. § 1983 – excessive use-of-force by Dep. Ochoa against RB under the Fourth and Fourteenth Amendments;

- Count Two – 42 U.S.C. § 1983 – excessive use-of-force by Officer Werner against RB under the Fourth and Fourteenth Amendments;

- Count Three – 42 U.S.C. § 1983 – failure of the County and Sheriff Brooks to properly train and supervise deputies with respect to the use of force;

- Count Four – 42 U.S.C. § 1983 – failure of the City and Chief Myers to properly train and supervise deputies with respect to the use of force;

- Count Five – 42 U.S.C. § 1983 – failure to protect against Dep. Ochoa and Officer Werner;

- Count Six – battery against Dep. Ochoa, the County, Officer Werner, the City, and Doe Defendants;

- Count Seven – negligence against Dep. Ochoa, the County, Officer Werner, the City, and Doe Defendants; and

-2-

- Count Eight – intentional infliction of emotional distress against Dep. Ochoa and the County and Officer Werner and the City.

5. Plaintiffs seek all compensatory damages available to them, including, but not limited to, damages for (a) RB's excruciating physical pain and suffering; (b) severe emotional suffering and mental anguish, despair, and hopelessness; (c) lost-earnings and/or loss of earning capacity in the future; (d) loss of the enjoyment; and (e) loss of consortium or society by Plaintiffs Joe and Pam Baker, individually, as RB's parents. Plaintiffs further request punitive damages against both Dep. Ochoa and Officer Werner, individually, as well as attorneys' fees, costs, expenses, and all other available and appropriate relief.

## II.   JURISDICTION AND VENUE

6. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Plaintiffs' claims arising under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over any claims brought by Plaintiffs under Tennessee law pursuant to 28 U.S.C. §1367, as such claims are so related to claims within the original jurisdiction of this Court as to form part of the same case or controversy under Article III of the United States Constitution.

8. Venue lies in the United States District Court for the Eastern District of Tennessee because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Claiborne County.  28 U.S.C. § 1391(b)(2).

## III.  PARTIES

### A.    Plaintiffs

9.      Plaintiffs RB, Joe Baker, and Pam Baker are citizens of the State of Tennessee residing in Claiborne County. RB is a minor whose date of birth is February 23, 2006. RB's next friends and natural guardians are his parents, Joe Baker and Pam Baker, who bring this action both on his behalf and individually.

### B.    Defendants

10.     Defendant, Claiborne County, Tennessee ("the County"), is a political subdivision of the State  of Tennessee and duly-organized. The County may be served with process through its chief executive officer, Mayor Joe Brooks, 1740 Main St., Tazewell, Tennessee 37879.

11.     The County possesses the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of the training, supervision, control, employment, assignment, and removal of individual members of the Claiborne County Sheriff's Office ("CCSO"), and to assure that actions, policies, rules, regulations, practices and procedures of the CCSO and its employees comply with the laws and constitutions of the United States and Tennessee.

12.     The County is responsible for training and certifying its law enforcement employees and implementing procedures and protocols to honor and respect the Due Process rights of citizens with whom its law enforcement employees interact.

13.     In this case, the County and the CCSO acted through their agents, employees, and servants, including policymakers like Defendant, Sheriff Bob Brooks

-4-

("Sheriff Brooks"), who is sued herein in his individual capacity and as principal on his official bond. At all times material hereto, Sheriff Brooks was operating under color of law. Sheriff Brooks is, upon information and belief, a citizen and resident of Claiborne County and may be served at the CCSO, 415 Straight Creek Rd., Tazewell, TN 37879.

14.     At all times material hereto, Sheriff Brooks was the duly-elected County Sheriff, responsible for the screening, hiring, firing, training and the supervision of CCSO employees, including deputies.

15.     At all times material hereto, Sheriff Brooks also possessed the power and authority and was charged by law to enact policies and to prescribe rules and practices concerning the use of force by CCSO deputies.

16.     At all relevant times, Defendant, Kenneth Joseph Ochoa, Jr. ("Dep. Ochoa"), was employed by the CCSO as a deputy. Dep. Ochoa is sued in his individual capacity and as principal on his official bond. At all relevant times, Dep. Ochoa was operating under color of law. Dep. Ochoa is, upon information and belief, a citizen and resident of Claiborne County and may be served with process at the CCSO, 415 Straight Creek Rd., Tazewell, TN 37879.

17.     Defendant, City of Tazewell, Tennessee (the "City") is a political subdivision of the State of Tennessee, the duly-formed municipal government for, and the political  entity that governs Tazewell, Tennessee. The City may be served with process through Mayor Bill Fannon, 1830 Main St, Tazewell, TN 37879.

18.     The City possesses the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of training, supervision, control,

-5-

employment, assignment, and removal of individual members of the Tazewell Police Department ("TPD"), and to assure that said actions, policies, rules, regulations, practices and procedures of the TPD and its employees and agents comply with the laws and constitutions of the United States and the State of Tennessee.

19.     The City and TPD are also responsible for all matters relating to the selection, supervision, promotion, training, and discipline of employees, including uniformed and non-uniformed employees.

20.     At all relevant times, Chief Jeremy Myers ("Chief Myers") was Chief of the TPD, responsible for the screening, hiring, firing, training and the supervision of TPD officers. Chief Myers is sued in his individual capacity and as principal on, if any, his official bond. At all relevant times, Chief Myers was operating under color of law. Chief Myers is, upon information and belief, a citizen and resident of Claiborne County and may be served with process at the TPD, 1830 Main St, Tazewell, TN 37879.

21.     At all relevant times, Officer Colby Werner ("Officer Werner"), was employed by the TPD. He is sued in his individual capacity and as principal on his official bond. At all relevant times, Officer Werner was operating under color of law. He is, upon information and belief, a citizen and resident of Claiborne County and may be served with process at the TPD, 1830 Main St, Tazewell, TN 37879.

22.     Plaintiffs also sue fictitious Defendants, referred to herein as John Does 1-5, as their true identities and/or capacities and/or other facts showing their

-6-

culpability are presently unknown. These fictitious Defendants are also sued in their individual capacities as CCSO or TPD employees, deputies, or officers, and as principals on their official bonds, if any.[1]

23.    Various persons not made Defendants, including County or CCSO officials or City and TPD officials, have participated in violations asserted herein and performed acts or made statements in furtherance thereof. Plaintiffs reserve the right to name some or all of these persons as Defendants, as they become known. These persons may  include unknown officers who committed excessive force against RB, failed to protect him, or committed other unconstitutional actions against him.

## IV.    FACTUAL ALLEGATIONS

24.    RB was fourteen years old in November 2020. He lived on a farm with his family and helped out by doing chores around the farm for his mom and dad. As with a lot of farm-kids, RB was not unfamiliar with operating vehicles or equipment around the farm, including a "four-wheeler" or all-terrain vehicle ("ATV").

25.    On November 7, 2020, RB was invited to a birthday get together for one of his friends who lived just a couple of miles down the road from the farm. His parents had no qualms about RB riding down there and attending the birthday celebration and even staying there overnight with a few of his friends. They checked to make sure RB got to his friend's house and RB even called them later that evening to tell them good

---

[1]Under Rules 4(m) and 15© of the Federal Rules of Civil Procedure, Plaintiffs may seek leave of Court to amend their Complaint to set forth the true names and capacities of such Defendants once their identities are ascertained.

night, as he had always done when he was away at a friend's house.

26. In the early morning hours of November 8, 2020, at about 5:00 a.m., RB and one of his friends decided to take the ATV down the road to a little market to get snacks. They got there, but the market had not opened yet, so the boys turned right around and headed back to their friend's house.

27. Around that time, Claiborne County Sheriff's Office Deputy Colby Mullins was out patrolling on Tom Bell Road and saw RB driving the ATV going south on Highway 25E. According to Mullins, the ATV's headlights and brake-lights were not on at the time, so he turned on his lights and siren to initiate traffic stop.

28. Worried that he was going to get a ticket, the 14-year old RB was scared and did not stop. Mullins gave chase and reported that the ATV was trying to evade him. He was eventually joined by Claiborne County Sheriff's Sgt. Isaac Steven Cline, Dep. Randy Bruce Wilmoth, and Tazewell Police Department Officer Colby Werner, who decided to try to box-in the ATV to stop it.

29. RB drove the ATV over country roads and through yards, trying to get back to his friend's house. Other law enforcement officers, including Claiborne County Sheriff's Deputy Ochoa, joined the pursuit of 14-year old RB and his teenage friend.

30. Eventually, on Little Sycamore Road, Officer Werner got in front of the ATV, braked, slowed, then stopped his patrol car, at which point the ATV and RB bumped into the rear of Officer Werner's patrol car and slipped off the road into a ditch.

-8-

31.     Contrary to what one deputy reported as having given RB "multiple commands to remove his hands from his waistband," as soon as the ATV stopped and RB's foot hit the ground as he was getting off the ATV, he was grabbed from behind by Officer Werner, then tackled violently from behind by the 235-pound Dep. Ochoa. RB went hard and face-down, slamming into the dirt, his arms and hands pinned beneath him by more than 450-pounds of human weight.

32.     As RB tried to turn and raise his head up off the ground, the 35-year old Dep. Ochoa was on top of him and began punching him repeatedly in the face. Although Dep. Ochoa and Officer Werner have indicated that RB was "resisting" them and that he had "head-butted" them, all the boy was really trying to do was to get his beaten face out of the dirt, in order to breathe.

33.     As RB laid helpless and face-down in the dirt, his hands and arms pinned under him, getting punched in the face by Dep. Ochoa, Officer Werner, who had arrived around the same time as Dep. Ochoa, began kneeing and kicking RB violently with his boot about the face, head, and torso. This, according to one deputy, was the "necessary amount of force" to apprehend both juveniles.

34.     By now, other patrol cars had arrived on the scene, six in all, and no fewer than seven or eight deputies or officers from two law enforcement agencies were there to apprehend the two boys who, minutes earlier, had merely decided to ride the ATV down to the neighborhood store.

-9-

35.    Moments later, one or more of the numerous officers pulled RB's arms – still pinned underneath his body – behind him and handcuffed him, as he laid face-down in the dirt, smothering.

36.    A deputy, talking to the 14-year old boy, says, "you stupid son of a bitch!" Another deputy is heard asking RB, "why'd you run, dumbass, on a fucking four-wheeler?" RB responded with the candor of a kid, "I was afraid I was going to get a ticket."

37.    As Kolby Mullins arrives, his body-camera is operational and shows multiple officers on top of RB as he is hand-cuffed and subdued face down on the ground. RB is saying, "please, please, no." A deputy, appearing to be Dep. Ochoa, says to the boy, "shut your mouth, shut up or I'm gonna shut you up!"

38.    With Dep. Ochoa still hovering over him, RB, still handcuffed and face-down on the ground, said "you knocked the shit out of me!" Dep. Ochoa responded, "you're lucky that's all you got, you little motherfucker."

39.    What RB got – from Dep. Ochoa and Officer Werner (and possibly others) – was being knocked unconscious, a concussion, suffering severe facial trauma, a blow-out fracture of the left orbital wall, a bloody nose, bilateral mandible pain, head trauma from the beating and kicking, radiating head and facial pain, and daily pounding headaches. *See* Exhibit 1. According to his neurologist, the now 15-year old RB has developed post-traumatic stress disorder ("PTSD") symptoms and has had to begin therapy to cope with what happened to him that early morning a year ago. He

-10-

suffers' from "lots of nightmares," has insomnia, is plagued by the fear of being beaten, and is burdened indefinitely with ongoing anxiety.

40.     A few minutes later, as the group of law enforcement officers from Claiborne County and Tazewell Police Department congregate to discuss the incident, they are all heard laughing about it on one officer's body-camera video, as a 14-year old boy sits in the back-seat of one of their patrol cars with multiple facial fractures, head trauma, and other injuries that will plague him, from what his doctors say, for the foreseeable future.

41.     Dep. Ochoa also appears on a body-camera video, bragging and laughing about how he – all of 35 years old and 235 pounds – tackled a 14-year old boy to the ground and "punched him." To his buddies, Dep. Ochoa says, "I didn't want to kill the boy," and "I fucking clocked him right in his fucking face!"

42.     Around 6:00 a.m., RB's father, Joe Baker, got a call from his son's phone from Dep. Wilmoth, who informed him that RB and another boy were "in custody" for evading police on a 4-wheeler.

43.     RB was taken to the Justice Center in Tazewell and evaluated by EMS workers, who apparently did not think his beaten face, bludgeoned left eye, and fractures were serious. However, RB has required substantial medical attention as a result of the incident, *e.g.*, a maxillofacial surgeon for facial fractures, a child neurologist for head trauma, an ENT for facial fractures, an ophthalmologist for vision problems, a dentist for teeth-grinding due to a jaw injury, and occupational, physical, and speech therapists. RB's education was also impacted, as he suffers from PTSD. He

-11-

had to be home-schooled after the incident and has been afflicted with comprehension deficits and short-term memory loss.

44. The family's Yamaha ATV was towed and impounded, although the tow company released it to Joe and Pam without charge.

45. Meanwhile, the deputies cobbled together a total of fifteen (15) criminal charges to level at RB, most, but not all, concerning his operation of the ATV.

46. Beginning in December 2020, Plaintiffs' counsel repeatedly requested, in writing, copies of documents related to the incident as well as any audio or video recordings from the Claiborne County Sheriff's Office. Lt. Hurley of the Sheriff's Office eventually responded in February 2021 that copies of videos were in his desk "and ready to mail," but said that Dep. Ochoa's body camera was knocked from his body at the scene and Sgt. Cline's battery was exhausted. So, the only video's provided were Dep. Mullins's and Dep. Wilmoth's. Plaintiffs' counsel never received the Ochoa and Cline videos despite multiple requests.

## V. WAIVER OF IMMUNITY

47. The County and the City have waived immunity for its own negligence and for its employees, misconduct of officers acting under color of law, and for the negligence of officers, as set out in Tenn. Code Ann. § 29-20-305. There is no immunity for individuals for criminal conduct, or conduct which is willful or malicious.

-12-

## VI. CLAIMS FOR RELIEF

## COUNT ONE

## EXCESSIVE FORCE – PHYSICALLY ASSAULTING RB

### Violation of Civil Rights under Color of Law
### 42 U.S.C. §§ 1983 and 1988 under the Fourth and Fourteenth Amendments

### (Against Dep. Ochoa Only)

48.     The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

49.     Dep. Ochoa was the first or second officer to come upon RB after his ATV came to a stop. As RB began to step out of the ATV, Dep. Ochoa immediately tackled him from behind, taking him face-down into the ground, pinning RB's hands and arms beneath him. As RB tried to raise his head off the ground, Dep. Ochoa was on his back, hitting RB hard in the back with his knee, then punching RB in the face with his fists, hitting him repeatedly so hard it knocked RB unconscious, giving him a concussion and causing a blow-out fracture of the bones around his left eye.

50.     Since at least 2009, the use of violence against a subdued and non-resisting individual like RB has been clearly established as excessive.

51.     Dep. Ochoa's actions in proximately causing traumatic injuries to RB, as described above, were unreasonable and excessive under the circumstances.

-13-

52.     RB's resistance, if any, was passive at best, consisting of trying to raise his head up off the ground after being tackled and taken to the ground. A reasonable officer would have recognized that the circumstances did not support the level of force Dep. Ochoa used on RB.

53.     There was no apparent risk of an immediate threat to Dep. Ochoa, Officer Werner, or any other officer, as RB was not brandishing a weapon. And even if some force were constitutionally reasonable (it was not), the degree of force at issue here – knocking the 14-year old RB unconscious, giving him a concussion, and fracturing the bones around his left eye, and causing other head trauma – was clearly over the line and unconstitutionally disproportionate to the circumstances.

54.     After his ATV came to a stop, RB was not attempting to flee the si patrol cars and seven or eight deputies or officers at the scene, hardly justifying the degree of force used by Dep. Ochoa.

55.     On November 8, 2020, Dep. Ochoa violated RB's civil rights by using a degree of physical force unnecessary and not objectively reasonable under the circumstances.  Dep. Ochoa's actions proximately caused injuries to RB and his disregard of RB's civil rights was done by either actual malice or deliberate indifference. As a result, RB has suffered, and will continue to suffer, substantial physical and serious psychological injury, conscious pain and suffering, and medical expenses.

-14-

56. Plaintiffs sue Dep. Ochoa for violation of RB's constitutional rights, and seek any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs, and discretionary costs.

## COUNT TWO

## EXCESSIVE FORCE – PHYSICALLY ASSAULTING RB

### Violation of Civil Rights under Color of Law
### 42 U.S.C. §§ 1983 and 1988 under the Fourth and Fourteenth Amendments

### (Against Officer Werner Only)

57. The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

58. Officer Werner arrived on the scene approximately at the same time as Dep. Ochoa. As the 235-pound Dep. Ochoa was on top of RB's back, RB's face was pressed into the ground, smothering him, and his hands and arms were pinned beneath his body. When RB tried to raise his head, Dep. Ochoa started hitting him in the face with his fists.

59. Officer Werner, aware that the 14-year old RB was subdued by Dep. Ochoa on his stomach and face-down on the ground, nevertheless started kicking the boy about the torso and head with his boot.

60. As noted above, since at least 2009, the use of violence against a subdued and non-resisting individual like RB has been clearly established as excessive.

61. Officer Werner's actions proximately caused injuries and pain and suffering to RB.

-15-

62.     RB's resistance, if any, was passive at best, consisting at most of trying to raise his head up from the ground to keep from smothering, as the 235-pound Dep. Ochoa knelt on his back. A reasonable officer would have recognized that the circumstances did not support the level of force the officers used on RB. RB presented no risk or immediate threat to officer safety, as he had not attempted to flee or hurt anyone after his ATV came to a stop.

63.     Even if some force were constitutionally reasonable (it was not), the degree of force at issue here – kicking a 14-year old boy in the torso and head so hard he was knocked unconscious – was clearly over the line and unconstitutionally disproportionate to the circumstances. Nothing RB had done justified Officer Werner's use of such an amount of force.

64.     On November 8, 2020, Officer Werner violated RB's civil rights by using a degree of physical force unnecessary and not objectively reasonable under the circumstances. Officer Werner's actions proximately caused injuries to RB and his disregard of RB's civil rights was done by either actual malice or deliberate indifference. As a result, RB suffered, and will continue to suffer, substantial physical and serious psychological injury, conscious pain and suffering, and medical expenses.

65.     Plaintiffs sue Officer Werner for violation of RB's constitutional rights, and seek any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs, and discretionary costs.

# COUNT THREE

## FAILURE TO TRAIN AND SUPERVISE

### Violation of Civil Rights under Color of Law,
### 42 U.S.C. §§ 1983 and 1988 under Fourth and Fourteenth Amendments

### (Against the County and Sheriff Brooks, Individually)

66.     The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

67.     As Sheriff, Sheriff Brooks has final authority and makes policy for the County and CCSO in establishing and implementing policies and/or procedures with respect to the use of force by deputies against citizens (including both less-lethal and deadly force) and the legal limits of such activities for deputies employed by the CCSO.

68.     Here, the unconstitutional consequences of failing to train officers in the reasonable and justifiable use of force are so patently obvious that the County and Sheriff Brooks are liable under § 1983. Dep. Ochoa's actions –

- the unnecessary physical attack on RB, tackling him, taking him to the ground, kneeing him in the back, then repeatedly punching him in the face and head;

- complete failure to utilize the force-continuum in choosing which methods of force to utilize on RB;

- the failure to effectively use a lesser degree of force; and

- the unnecessary and unreasonable use of force without warning –

demonstrate such obvious and egregious training and supervisory deficiencies to make CCSO's use-of-force training constitutionally defective.

-17-

69. Upon information and belief, as final policymaker for the CCSO, Sheriff Brooks established and implemented policies and procedures, and/or ratified pre-existing policies and procedures, regarding the use of force by CCSO deputies against citizens (including less-lethal and deadly force), which policies and procedures themselves violate federal constitutional law.

70. Even if the policies and procedures regarding the use of force by deputies against citizens (including both less-lethal and deadly force) do not themselves violate federal law, there is and was – at the time of the encounter between Dep. Ochoa and RB – a persistent and widespread practice among CCSO deputies of using excessive force on a subject when it is unnecessary and objectively unreasonable as a matter of law to do so, amounting to a custom or course of conduct so widespread as to become informal CCSO policy, acquiring the force of law.

71. And even if the formal policies and procedures of the CCSO are not unlawful, alternatively, the operation of such policies and procedures "on the street" reflects a standard operating procedure, and a widespread and persistent practice, of CCSO deputies violating citizens' federally-protected rights as identified herein.

72. At all times material, Sheriff Brooks and the County have known or have had constructive knowledge of this widespread and persistent practice of violations, but have refused or failed to take measures reasonably necessary to prevent or minimize such violations.

73. The response by Sheriff Brooks and the County to these constitutional violations has been inadequate. These include but are not limited to:

-18-

- the lack of or inadequate mechanism for identifying or tracking unconstitutional uses of force;

- the lack of or inadequate documentation of individual uses of force, and the justification for such;

- the lack of or inadequate supervisory review of documentation of individual uses of force and the justification for such;

- the lack of or inadequate mechanism for monitoring or tracking uses of force;

- the lack of unbiased investigation of complaints of improper uses of force;

- the lack of or inadequate investigation of complaints of improper uses of force;

- the lack of or inadequate training regarding the legal limitations on the permissible use of force, both less-lethal and deadly force; and

- the lack of or inadequate discipline of individual officers found to have committed unlawful uses of force.

74.    Violations of citizens' constitutional rights of the type inflicted on RB, specifically the use of excessive and unreasonable force, are the known or obvious consequences either of formal County or CCSO policies and procedures that violate federal law, or of a widespread and persistent practice and custom of such violations to which Sheriff Brooks and the County have acquiesced or have tacitly authorized. The actions and omissions of Sheriff Brooks and the County, as identified herein,

-19-

reflect deliberate indifference on the part of Sheriff Brooks and the County to such known or obvious consequences of their actions and omissions, as resulted in the deprivation of RB's federally-protected rights.

75. Such widespread and persistent violations of citizens' constitutional rights, as condoned by Sheriff Brooks and the County, were the moving force behind – and directly and proximately caused – the violations of RB's constitutional rights and his injuries; and render Sheriff Brooks and the County liable.

76. The County, CCSO, and Sheriff Brooks failed to train and supervise their deputies to avoid using excessive force, failed to meaningfully investigate allegations of such force, and attempted to conceal unconstitutional conduct by failing to conduct transparent investigations, and by unreasonably exonerating officers, like Dep. Ochoa, through sham investigations or no investigations at all, rather than searching for justice.

77. The County, CCSO, and Sheriff Brooks had a duty of care to ensure that CCSO officers were properly trained in the appropriate procedure for using force against citizens. This duty extends to ensuring that CCSO officers were properly trained concerning the limits of their authority to use force.

78. The County, CCSO, and Sheriff Brooks had a duty to properly supervise CCSO officers and ensure CCSO supervisory officers did not condone the unnecessary uses of force. This is especially true when there is (a) a "likelihood that [a] situation will recur" (b) with such a "high degree of predictability" that "an officer lacking specific tools to handle that situation will violate citizens' rights." Deputies must have

specific training to be equipped to properly react to situations, as in this case, without unnecessarily escalating them to force situations.

79.    In this case, Dep. Ochoa lacked the tools that the County, CCSO, and Sheriff Brooks should have provided him to safely handle the situation with RB. Consequently, he unnecessarily escalated the level of force necessary.

80.    By not conducting a meaningful investigation of Dep. Ochoa, Sheriff Brooks let it be known that he condoned Dep. Brooks' unreasonable use-of-force.

81.    By ratifying Dep. Ochoa's unreasonable use-of-force, Sheriff Brooks knowingly acquiesced in the unconstitutional conduct of Dep. Ochoa through the execution of his job function, rendering the County liable to Plaintiffs.

82.    The County, CCSO, and Sheriff Brooks's failure to develop and promulgate lawful policies outlining the guidelines for such situations and the appropriate use-of-force and to properly train its officers and supervisors to follow such guidelines constitute deliberate indifference to the constitutional rights of citizens.

83.    The failure of Sheriff Brooks – and unknown supervisors – to recognize or appreciate the gravity of Dep. Ochoa's actions implies that they found no wrong in his conduct, all but "green lighting" Fourth Amendment violations by CCSO deputies.

84.    Here, Dep. Ochoa believed that his actions – including punching RB in the face – would not be properly monitored or corrected by supervisory officers and that his misconduct would be tolerated and accepted. His belief was prescient.

85.    As a direct and proximate result of the actions/omissions of the County, CCSO, and Sheriff Brooks causing the violation of his Fourth Amendment rights, RB

-21-

suffered (a) excruciating physical pain and suffering; (b) severe emotional suffering and mental anguish, despair, and hopelessness; (c) lost earnings and/or loss of earning capacity in the future; and (d) loss of the enjoyment. Plaintiffs also seek recovery for having lost RB's society and companionship.

86. Plaintiffs sue the County and Sheriff Brooks for violating RB's constitutional rights and seek any and all damages allowable to them, as well as attorney's fees pursuant to 42 U.S.C. § 1988, costs, and discretionary costs.

## COUNT FOUR

## MUNICIPAL LIABILITY – FAILURE TO TRAIN AND SUPERVISE

### Violation of Civil Rights under Color of Law
### 42 U.S.C. §§ 1983 and 1988 under the Fourth and Fourteenth Amendments

### (Against the City and Chief Myers, Individually)

87. The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

88. As Chief of Police of the City, Chief Myers has final authority and makes policy for the City and TPD in establishing and implementing policies and/or procedures with respect to the use of force by police against citizens (including both less-lethal and deadly force), as well, as the legal limits of such activities, for police officers employed by the TPD.

89. Here, the unconstitutional consequences of failing to train officers in the reasonable and justifiable use of force are so patently obvious that the City and Chief Myers are liable under § 1983. Officer Werner's actions –

-22-

- the unnecessary kneeing and kicking of RB as he was already subdued face-down on the ground;

- the complete failure to utilize the force-continuum in choosing which methods of force to utilize on RB;

- the failure to effectively use non-deadly force; and

- the unnecessary and unreasonable use of force without warning –

demonstrate such obvious and egregious training and supervisory deficiencies to make TPD's use-of-force training constitutionally defective.

90.     Upon information and belief, as final policymaker for the TPD, Chief Myers established and implemented policies and procedures, and/or ratified pre-existing policies and procedures, regarding the use of force by TPD officers against citizens (including less-lethal and deadly force), which policies and procedures themselves violate federal constitutional law.

91.     Even if the policies and procedures regarding the use of force by police against citizens (including both less-lethal and deadly force) do not themselves violate federal law, there is and was – at the time of the encounter between Officer Werner and RB – a persistent and widespread practice among TPD officers of using excessive or unreasonable force on a subject when it is unnecessary and objectively unreasonable as a matter of law to do so, amounting to a custom or course of conduct so widespread as to become informal TPD policy, acquiring the force of law.

92.     And even if the formal policies and procedures of the TPD are not themselves unlawful, alternatively, the operation of such policies and procedures "on

-23-

the street" reflects a standard operating procedure, and a widespread and persistent practice, of TPD officers violating citizens' federally-protected rights as identified herein. This standard operating procedure is shown by citizen lawsuits charging police misconduct; citizen complaints regarding such misconduct; and the TPD's limited internal records of individual instances of application of these policies and procedures, such as incidents involving the use of less lethal and deadly force.

93.     At all times material to this complaint, Chief Myers and the City have known or have had constructive knowledge of this widespread and persistent practice of violations, but have refused or failed to take measures reasonably necessary to prevent or minimize such violations.

94.     The response by Chief Myers and the City to this widespread and persistent practice of constitutional violations has been inadequate.  These include but are not limited to:

- the lack of or inadequate mechanism for identifying or tracking unconstitutional uses of force;

- the lack of or inadequate documentation of individual uses of force, and the justification for such;

- the lack of or inadequate supervisory review of documentation of individual uses of force and the justification for such;

- the lack of or inadequate mechanism for monitoring or tracking uses of force;

- the lack of unbiased investigation of complaints of improper uses of force;

■ the lack of or inadequate investigation of complaints of improper uses of force;

■ the lack of or inadequate training regarding the legal limitations on the permissible use of force, both less-lethal and deadly force; and

■ the lack of or inadequate discipline of individual officers found to have committed unlawful uses of force.

95. Violations of citizens' constitutional rights of the type inflicted on RB, specifically including the use of excessive force, are the known or obvious consequences either of formal City or TPD policies and procedures that themselves violate federal law, or of a widespread and persistent practice and custom of such violations in which Chief Myers and the City have acquiesced or which they have tacitly authorized. The actions and omissions of Chief Myers and the City, as identified herein, reflect deliberate indifference on the part of Chief Myers and the City to such known or obvious consequences of their actions and omissions, as resulted in the deprivation of RB's federally-protected rights.

96. Such widespread and persistent practices of violations by City officers of citizens' constitutional tights, as acquiesced in by Chief Myers and the City, were the moving force behind – and directly and proximately caused – the violations of RB's rights; and render the City liable for the causal connection between this deliberate indifference and Officer Werner's violations of RB's rights, and/or the City's custom or practice of constitutional violations that proximately resulted in the violation of RB's rights.

-25-

97. The City, TPD, and Chief Myers failed to train and supervise officers or employees to avoid the use of excessive force, including less-lethal and deadly force, failed to meaningfully investigate allegations of such force, and have attempted to conceal unconstitutional conduct by failing to conduct transparent investigations, and by exonerating officers, like Officer Werner, through sham investigations focused on exonerating TPD officers, rather than searching for justice.

98. The City, TPD, and Chief Myers had a duty of care to RB to ensure that TPD officers were properly trained in the appropriate procedure for using force. This duty extends to ensuring that TPD officers were properly trained concerning the limits of their authority to use force.

99. The City, TPD, and Chief Myers also had a duty to properly supervise TPD officers and to ensure that TPD supervisory officers do not condone the unnecessary use of force. This is especially true when there is (a) a "likelihood that [a] situation will recur" (b) with such a "high degree of predictability" that "an officer lacking specific tools to handle that situation will violate citizens' rights." Here, routine investigations or similar traffic incidents by TPD patrol officers are a frequent part of their daily shifts. Officers must have specific training to be equipped to properly react to recurring situations, such as the one presented, without unnecessarily escalating them.

100. In this case, Officer Werner lacked the tools the City, TPD, and Chief Myers should have provided him to allow him to safely handle the situation that confronted him. Consequently, Officer Werner wound up unnecessarily escalating the

-26-

level of force and needlessly causing a minor citizen's injury, over what began as a routine investigation of a misdemeanor traffic offense.

101.    By ratifying Officer Werner' unreasonable use-of-force against RB, Chief Myers knowingly acquiesced in the unconstitutional conduct of Officer Werner through the execution of his job functions, rendering the City liable to Plaintiff.

102.    The City, TPD, and Chief Myers' failure to develop and promulgate lawful policies outlining the guidelines for such situations and the appropriate use-of-force and to properly train its officers and supervisors to follow such guidelines constitute deliberate indifference to the constitutional rights of citizens.

103.    The failure of Chief Myers – and unknown supervisors – to recognize or appreciate the gravity of Officer Werner' actions imply that they, too, found no wrong in his conduct, all but "green lighting" Fourth Amendment violations by TPD officers.

104.    Here, Officer Werner believed that his actions would not be properly monitored or corrected by supervisory officers and that his misconduct would be tolerated and accepted. His belief was prescient.

105.    As a direct and proximate result of the actions and omissions of the City, TPD, and Chief Myers causing the violation of his Fourth Amendment rights, RB suffered (a) excruciating physical pain and suffering; (b) severe emotional suffering and mental anguish, despair, and hopelessness; (c) lost earnings and/or loss of earning capacity in the future; and (d) loss of the enjoyment. RB's parents lost society and companionship of RB.

-27-

106.    Plaintiff sues the City and Chief Myers for violating RB's constitutional rights, and seek any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs, and discretionary costs.

## COUNT FIVE

## FAILURE TO PROTECT

### Violation of Civil Rights under Color of Law
### 42 U.S.C. §§ 1983 and 1988 under the Fourth and Fourteenth Amendments

### (Against Dep. Ochoa, Individually; Officer Werner, Individually; and Doe Defendants, Individually)

107.    The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

108.    The law enforcement officers first on the scene – Dep. Ochoa, Officer Werner, and possibly John Doe officers – did nothing to protect RB.

109.    These Individual Defendants owed RB a duty of care to protect him. A special relationship existed between RB and these Defendants which gave rise to that duty. They breached that duty by, among other actions, needlessly, unreasonably, and gratuitously inflicting pain on RB, particularly as he was face-down on the ground with his hands and arms pinned beneath him.

110.    As a direct and proximate result of the acts or omissions of these Defendants, RB suffered injuries.

111.    Plaintiffs sue these Defendants for their violation of his constitutional rights, and seek any and all damages allowable, attorney's fees pursuant to 42 U.S.C. § 1988, costs, and discretionary costs.

-28-

## COUNT SIX

## BATTERY

### (Against the County; Dep. Ochoa, Individually; the City; Officer Werner, Individually; and Does 1-5, Individually)

112. The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

113. The above-described actions by Dep. Ochoa, Officer Werner, and the Doe Officers, acting under color of law and in the course and scope of their employment for the County or City, constitute battery against RB.

114. The deputies or officers, through the actions described above, did intentionally attempt to do and did cause serious bodily harm to RB and caused him conscious pain and suffering and psychological trauma. Each of these deputies or officers, in the course of their employment, made contact with RB in a harmful and offensive way, committing battery against him.

115. Plaintiffs sue these Defendants for battery and seek any and all damages allowable, costs, and discretionary costs.

## COUNT SEVEN

## NEGLIGENCE

### (Against the County; Sheriff Brooks, Individually; Dep. Ochoa, Individually; the City; Chief Myers, Individually; and Officer Werner Individually)

116. The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

-29-

117. Defendants had a duty to RB to act with ordinary care and prudence so as not to cause him harm or injury.

118. The actions of Defendants were negligent and reckless, including but not limited to, the use-of-force against RB and the failure to protect him from harm which culminated in severe injuries to RB.

119. Defendants owed a duty to the public in general and specifically to RB to use due care in fulfilling their duties and to ensure their conduct conformed to applicable laws, policies, procedures, and generally accepted law enforcement standards. As described above, Defendants breached their duties of due care and were negligent, grossly negligent, reckless, willful, and wanton in all of the foregoing particulars.

120. Pursuant to the Tennessee Governmental Tort Liability Act, these Defendants also owed RB a duty of care to be free from excessive force and to protect him from injury.

121. As a direct and proximate result of Defendants' conduct, as alleged above, and other undiscovered negligent conduct, RB suffered severe injuries and pain and suffering.

122. The foregoing acts of Dep. Ochoa and Officer Werner proximately caused the injuries to RB, entitling Plaintiffs to recover compensatory damages from Defendants for such damages. Said damages include, but are not limited to, pain and suffering, lost wages, and his parents' loss of RB's services, society, and companionship.

-30-

## COUNT EIGHT

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Dep. Ochoa and Officer Werner, Individually)

123.   The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

124.   The actions alleged herein against the Dep. Ochoa were outrageous and utterly intolerable in a civilized society, and were done with a reckless disregard of the probability of causing emotional distress.

125.   From almost the moment Dep. Ochoa and Officer Werner encountered RB, they unnecessarily and unreasonably escalated the situation – creating a serious risk of harm for RB which culminated in RB receiving severe injuries.

126.   Dep. Ochoa's and Officer Werner's conduct was perpetrated with the intent to inflict, or with reckless disregard of the probability of inflicting, mental anguish on RB.

127.   The aforementioned acts were done knowingly, intentionally, and maliciously, for the purpose of oppression and inflicting injury upon RB, and in reckless, wanton and callous disregard of his safety, security, and civil rights. By reason thereof, Plaintiffs claim compensatory damages of $1,000,000 as well as punitive damages of $1,500,000 (or in an amount to be proven at trial) sufficient to punish and deter Dep. Ochoa and Officer Werner and others similarly situated from engaging in similar conduct in the future.

-31-

128.    The County is also liable to Plaintiffs under Tenn. Code Ann. § 8-8-301, et seq.

## COUNT NINE

## LOSS OF SOCIETY AND CONSORTIUM

### (Joe and Pam Baker, Individually, Against all Defendants)

129.    The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

130.    As a direct and proximate result of the Defendants' actions, Plaintiffs Joe Baker and Pam Baker, individually, have sustained emotional distress and suffering caused by seeing their minor son suffer serious pain and discomfort due to the injuries he received as a direct result of their actions.

131.    As a direct and proximate result of the assault by Dep. Ochoa and Officer Werner on RB, Plaintiffs, Joe and Pam Baker, individually, lost the services, companionship, consortium and society of their minor son, to which they were entitled as his parents. They sue for their derivative losses in an amount to be determined as fair and reasonable by a jury at the trial of this matter.

## VII.   JURY DEMAND

132.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

# VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray:

A.      That Defendants be served with a copy of this Complaint and be required to answer;

B.      That the Court find that Defendants have engaged in the conduct and statutory and common law violations alleged herein;

C.      That Plaintiffs be awarded such damages as will fully compensate RB and Joe and Pam Baker, Individually, for all injuries proximately caused by Defendants' actions and that judgment in their favor be entered;

D.      That Plaintiffs be awarded $1,000,000 in compensatory damages;

E.      That Plaintiffs be awarded $1,500,000 in punitive damages;

F.      That Plaintiffs have and recover their costs for this suit, including reasonable attorneys' fees and discretionary costs, as provided by law; and

G.      That Plaintiffs be awarded pre-judgment and post-judgment interest as permitted by common law or applicable statute and such other or further relief as may be just and proper.

-33-

Respectfully submitted, this 8th day of November, 2021.

/s/ Lance K. Baker
Lance K. Baker
Tenn. Bar #: 032945
**THE BAKER LAW FIRM**
550 Main Street, Suite 600
Knoxville, TN 37902
Tel: (865) 200-4117
Fax: (865) 437-3370
lance@lbakerlawfirm.com

*Counsel for Plaintiff*

-34-