UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOE BAKER, et al., | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No.: 3:21-CV-380-KAC-JEM |
| CLAIBORNE COUNTY, TENNESSEE, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions for summary judgment filed by Defendant Deputy Kenneth Joseph Ochoa, Jr. [Doc. 68] and Defendants Claiborne County, Tennessee and Sheriff Bob Brooks [Doc. 82]. On November 8, 2021, Plaintiffs filed a complaint [Doc. 1] raising various federal claims, under 42 U.S.C. § 1983, and state law claims. Defendants Deputy Ochoa, Claiborne County, and Sheriff Brooks subsequently filed the instant motions, asserting that they are entitled to judgment as a matter of law on all claims [*See* Docs. 68 at 1; 82 at 1]. For the foregoing reasons, the Court grants their motions in part and declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

**I.      Background[1]**

At 5:00 a.m. on November 8, 2020, 14-year-old R.B. and a friend took an ATV with no license tag or rearview mirror out onto the road, intending to drive to a local market [Doc. 94-1 at 16-17, 19, 30]. When they determined that the market was closed, R.B. and his friend began driving the ATV back to the friend's home on a public road without the ATV's rear lights

---

[1] Because Plaintiffs are the nonmoving Party, the Court describes the facts in the light most favorable to them. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

on [*Id.* at 16, 19, 20]. A law enforcement officer began following the ATV [*Id.* at 21]. After a "couple of seconds," the officer turned on his lights to initiate a traffic stop [*Id.*]. The officer initiated the stop because, among other things, the ATV was an "off-highway motor vehicle" "traveling [on the highway] without any rear tail or break lights operating" [*See* Doc. 58-2 at 4-5].

R.B. "kept driving" and accelerated away from the officer [Doc. 94-1 at 21]. A "couple minutes" later, a second police officer joined the pursuit [*Id.* at 24-25]. That officer pulled his vehicle in front of R.B. to slow R.B. down, but he "evaded" the officer [*Id.* at 25]. A third police officer joined the chase [*Id.* at 27]. R.B. continued to evade law enforcement, driving through a gas station parking lot and residential yards [*Id.* at 28-29]. Ultimately, a police officer positioned his cruiser in front of the ATV then stopped [*Id.* at 29-30]. At that point, the ATV "tapped" the police cruiser, and R.B. and the ATV ended up in a ditch [*Id.* at 29-30, 37].

As R.B. stepped off the ATV, Claiborne County Officer Colby Werner grabbed R.B. and Defendant Deputy Ochoa tackled R.B. [*See id.* at 50; 94-3 at 9-10; 94-4 at 7-8, 11-12]. Once on the ground, R.B. "resist[ed]" the police officers' attempts to handcuff him by keeping his "arms underneath [him]" [Doc. 94-1 at 37-38]. R.B. also "push[ed] off the ground" while officers attempted to subdue and control him [*Id.* at 38-39]. While R.B. attempted to push himself off the ground more than once, [*id.*], Defendant Deputy Ochoa punched R.B., [Doc. 94-3 at 20]. While R.B.'s arms were still underneath him, R.B. felt "knees in [his] back" and "got hit in the back of the head twice" and then on the side of his head [Doc. 94-1 at 52-54]. Officers gained control over R.B.'s arms and handcuffed him [*Id.* at 51]. At that point, R.B. stopped resisting [*Id.*]. After R.B. was handcuffed and under the officers' control, a "Sergeant Cline" told R.B. "you're lucky that's all you got, you little mother fucker," and an officer who was not Defendant Deputy Ochoa said that R.B. was "a stupid son of a bitch" [*See* Doc. 94-3 at 21-22].

2

R.B. was charged with felony evading arrest, in violation of Tennessee Code Annotated § 39-16-603 [Doc. 58-2 at 2]. On April 14, 2021, R.B. and his Parents, Plaintiffs Joe and Pamela Baker, signed a plea agreement in the Juvenile Court of Claiborne County [*Id.* at 17-18]. The plea agreement specified that R.B. was pleading guilty to felony evading arrest [*Id.*]. R.B. ultimately pled guilty to felony evading arrest [Doc. 58-4]. At the hearing, the court conducted an inquiry to ensure that R.B.'s guilty plea was knowing and voluntary [*Id.*].

Plaintiffs filed this action on November 8, 2021, raising various federal claims under 42 U.S.C. § 1983 and state law claims against multiple Defendants [Doc. 1]. Defendants Deputy Ochoa, Claiborne County, Sheriff Brooks, and yet unidentified "John Does 1-5" are the only remaining defendants in this action. Defendants Deputy Ochoa, Claiborne County, and Sheriff Brooks filed motions for summary judgment [Docs. 68, 82]. Plaintiffs responded, [Doc. 94], and Defendants Deputy Ochoa, Claiborne County, and Sheriff Brooks replied, [Docs. 95, 96].

II.   **Applicable Law**

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the nonmoving party and make all reasonable inferences that can be drawn from those facts. *See Matsushita*, 475 U.S. at 587. A moving party bears the burden of demonstrating that no genuine dispute of material fact exists. *See Bennett v. Hurley Med. Ctr.*, 86 F.4th 314, 323 (6th Cir. 2023) (citing *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019)). Once the moving party has met this burden, the opposing party cannot "rest upon the mere allegations or denials of his pleading, but . . . must set forth ***specific facts*** showing that there is a

3

genuine issue for trial." *See Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022) (emphasis added); *see also* Fed. R. Civ. P. 56.

"A genuine issue of material fact exists when there are disputes over facts that might affect the outcome of the suit under the governing law." *See Regions Bank v. Fletcher*, 67 F.4th 797, 802 (6th Cir. 2023) (citation and quotation omitted). "[T]he mere existence of a scintilla of evidence in support of" a nonmoving party's position is "insufficient" to overcome a summary judgment motion. *See Bennett*, 86 F.4th at 323 (citation omitted). To survive a summary judgment motion, then, there must be "***evidence*** on which the jury could reasonably find for" the nonmoving party. *Id.* (citation omitted) (emphasis added). Allegations in unverified pleadings or arguments of counsel are not evidence. *See Zakora*, 44 F.4th at 464; *see also United States v. Wilson*, 168 F.3d 916, 924 n.6 (6th Cir. 1999).

### III. <u>Analysis</u>

#### A. The Court May Consider R.B.'s Juvenile Court Records.

As an initial matter, Plaintiffs contend that the Court may not consider R.B.'s relevant juvenile court records because Tennessee state law prohibits any court other than the juvenile court from doing so [Doc. 94 at 9-10 (citing Tenn. Code Ann. § 37-1-133(b)]. But in an action in federal court under Section 1983 with supplemental state law claims, state evidentiary law does not bind a federal court. *See Hancock v. Dobson*, 958 F.2d 1367, 1373 (6th Cir. 1992). Federal law governs. *Id.* The party asserting a privilege bears the burden of establishing that such a privilege exists. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009). Plaintiffs cite no authority establishing that state juvenile court records are privileged under federal law, and this Court could identify none. As such, Plaintiffs have not overcome their burden of establishing a federal evidentiary privilege that would preclude the Court from considering these records.

4

Critically, "R.B. does not dispute that he pleaded guilty to charges of resisting arrest and felony evading in Claiborne County Juvenile Court" [Doc. 94 at 9]. The Court thus can consider R.B.'s juvenile records, including his admitted guilty plea, in assessing the summary judgment motions.

### B. The *Heck* Doctrine Bars Plaintiffs' Section 1983 Excessive Force Claim Against Defendant Deputy Ochoa.

The moving Defendants assert that the *Heck* Doctrine bars Plaintiffs' Section 1983 claims [Docs. 85 at 4-8 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)); 83 at 7-10 (same)]. In *Heck*, the Supreme Court held that "a plaintiff cannot recover in a § 1983 suit when the basis for the claim necessarily implies the invalidity of a previous state court conviction." 512 U.S. at 487; *see also Carr v. Louisville-Jefferson Cnty.*, 37 F.4th 389, 392 (6th Cir. 2022). *Heck* bars Section 1983 suits that would undermine prior state court criminal convictions **and** their "functional equivalent[s]." *See Morris v. City of Detroit*, 211 F. App'x 409, 411 (6th Cir. 2006) (emphasis added) (recognizing that juvenile adjudications are the functional equivalent of state criminal convictions). A conviction for resisting or evading arrest will bar a subsequent Section 1983 suit "when excessive force is an affirmative defense to the crime." *Id.* (citing *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)). "[U]nder Tennessee law, an officer's excessive use of force is a defense to a charge of resisting or evading arrest." *See Matheney v. City of Cookeville*, 461 F. App'x 427, 430-31 (6th Cir. 2012). As such, "a guilty plea and resultant conviction of such charge necessarily includes a finding that the officer did not use excessive force." *Id.* at 431 (citation omitted). "Conversely, an excessive force claim is not barred when the alleged use of force occurred *after* the suspect was **handcuffed and subdued**." *Id.* (emphasis added). What matters temporally is whether the use of force is "inextricably intertwined with the suspect's resistance to arrest." *Id.* (quotation marks omitted).

5

Case 3:21-cv-00380-KAC-JEM   Document 104   Filed 06/07/24   Page 5 of 10   PageID #: 1059

Here, *Heck* bars Plaintiffs' Section 1983 excessive force claim against Defendant Deputy Ochoa. R.B.'s guilty plea in the Claiborne County Juvenile Court is the "functional equivalent" of a state court criminal conviction. *See Morris*, 211 F. App'x at 411. Parties in juvenile court proceedings may introduce evidence and cross-examine adverse witnesses. *See* Tenn Code Ann. 37-1-127(a)-(b). Further, illegally seized evidence must be excluded and extra-judicial statements that would be constitutionally inadmissible in a criminal proceeding must be excluded. *See id.* § (c)-(d). The Juvenile Court conducted an inquiry to ensure R.B.'s plea was knowing and voluntary [*See* Doc. 58-4]. And Tennessee law provides a mechanism for minors to appeal juvenile court judgments to courts with criminal jurisdiction. *See* Tenn. Code Ann. 37-1-159(a).

And success on Plaintiffs' excessive force claim would "necessarily impl[y] the invalidity of" R.B.'s guilty plea before the Claiborne County Juvenile Court. *See Heck*, 512 U.S. at 487; *see also Carr*, 37 F.4th at 392. R.B. pled guilty to evading arrest [Doc. 58-2 at 17-18]. Under Tennessee law, that the arrest was unlawful—including that excessive force was used to effectuate the arrest—is an affirmative defense. *See* Tenn Code Ann. § 39-16-603(a)(2); *see also Parvin v. Campbell*, 641 F. App'x 446, 449 (6th Cir. 2016). Because "an officer's excessive use of force is a defense to a charge of" "evading arrest," R.B.'s guilty plea "necessarily includes a finding that the officer did not use excessive force." *See id.*; *see also Matheney*, 461 F. App'x at 430-31.

Plaintiffs refuse that conclusion, arguing that *Heck* does not apply to R.B.'s claims "to the extent they are based on [Defendant Deputy] Ochoa's alleged excessive force applied *subsequent to* R.B.'s resistance" [Doc. 94 at 22]. But Plaintiffs' argument—which includes no specifically identified temporally relevant facts—runs into too many obstacles.

*First*, Plaintiffs confuse the nature of the temporal inquiry. The question is not whether a defendant used force as some indefinite point "subsequent to" the "resistance." The operative

6

question is whether "the alleged use of force occurred *after* the suspect was handcuffed and subdued" when the force was no longer "inextricably intertwined with the suspect's resistance." *See Matheney*, 461 F. App'x at 430-31. Plaintiffs rely on *Sweicicki v. Delgado*[2] to argue otherwise—that reliance is misplaced. In *Sweicicki*, the Court explained the basic proposition that if the plaintiff "resisted (i.e., jerked his arm away), and if the resistance occurred *before* the use of force by" the defendant, plaintiff's conviction for resisting arrest based on the earlier jerking away would not necessarily be relevant to the later-in-time use of force by defendant. *See* 463 F.3d at 495. This accords with prevailing precedent directing courts to "carefully examine" "the temporal sequence of the underlying offense and the alleged unconstitutional conduct" to assess "whether the alleged excessive force is used *after* the suspect ceases resisting arrest." *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 602 (6th Cir. 2014).

**Second**, Plaintiffs fail to present even "a scintilla of evidence" to show that Defendant Deputy Ochoa used excessive force at the relevant time—after R.B. was handcuffed and stopped resisting. *See Bennett*, 86 F.4th at 323 (citation omitted). The record evidence properly considered at summary judgment provides that the use of force by Defendant Deputy Ochoa was inextricably intertwined with R.B.'s resistance and that the use of force stopped once R.B. was handcuffed and subdued. By his own account, R.B. "resisted" the officers' attempts to handcuff him by keeping his arms underneath him [Doc. 94-1 at 37-38, 54]. R.B. was on the ground "lifting up and pushing back" against the officers during the attempted arrest [*Id.* at 38-39]. And once R.B. was handcuffed, he stopped resisting [*Id.* at 51]. At this point, R.B. started talking with officers, and crude language was used. [*See* Docs. 97-1 at 33; 94-3 at 21]. It is unclear on this record whether

---

[2] 463 F.3d 489 (6th Cir. 2006), *abrogated on other grounds by Wallace v. Kato*, 549 U.S. 384 (2007).

7

Defendant Deputy Ochoa used any of that language. Nevertheless, crude language is not the stuff of an excessive force claim. *See Wingo v. Tenn. Dep't of Corrs.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats" are "insufficient to support a section 1983 claim"). Plaintiffs have identified no specific facts showing that any unconstitutional force by Defendant Deputy Ochoa occurred after R.B. was handcuffed and subdued. Allegations in an unverified complaint and arguments by counsel do not suffice. *See Zakora*, 44 F.4th at 464; *see also Wilson*, 168 F.3d at 924 n.6. Because Plaintiffs failed to produce evidence that Defendant Deputy Ochoa used excessive force after R.B. was handcuffed and subdued, and R.B. pled guilty to felony evading arrest, *Heck* bars Plaintiffs' excessive force claim against Defendant Deputy Ochoa. Therefore, the Court grants him summary judgment on this claim.[3]

### C. Plaintiffs' Section 1983 Claim Against Defendant Claiborne County Fails Because Plaintiffs Have Not Established A Constitutional Violation.

The Complaint asserts a Section 1983 claim for failure to train and supervise against Defendant Claiborne County [Doc. 1 ¶¶ 66-86]. To prevail on this claim, Plaintiffs must demonstrate that a "municipal 'policy or custom' 'actually serves to deprive'" an individual of his or her rights. *See Mosier v. Evans*, 90 F.4th 541, 548 (6th Cir. 2024) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)). "Where no constitutional violation to the victim has occurred, a claim for municipal liability cannot survive." *See Creger v. Tucker*, No. 23-5045/5047, 2024 WL 124437, at *17 (6th Cir. Jan. 11, 2024). And with rare exceptions not applicable here, *see Grote v. Kenton Cnty.*, 85 F.4th 397, 414-15 (6th Cir. 2023), "[i]f no

---

[3] Plaintiffs' Complaint contained Section 1983 "failure to protect" claims against Defendants Deputy Ochoa and "John Does 1-5" [Doc. 1 ¶¶ 107-11]. But Plaintiffs "abandon[ed] their claims for failure to protect (Count Five)" [Doc. 94 at ii]. Plaintiffs cannot proceed on those abandoned claims. *See, e.g., Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013). The Court dismisses those claims on this basis.

constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable," *see Westmoreland v. Butler Cnty.*, 29 F.4th 721, 731 (6th Cir. 2022).

Plaintiffs Section 1983 claim against Defendant Claiborne County is premised on Defendant Deputy Ochoa's alleged use of excessive force [*See, e.g.*, Doc. 1 ¶¶ 68, 70, 73-74, 77-79, 82]. But, as discussed above, Plaintiffs have identified no evidence that Defendant Deputy Ochoa used inappropriate force after R.B. was handcuffed and subdued. Therefore, Plaintiffs cannot demonstrate a constitutional violation on that premise. *See Parvin*, 641 F. App'x at 450; *see also Matheney*, 461 F. App'x at 431. And Plaintiffs have not identified facts showing that any other Claiborne County officer used unconstitutional force. Because Plaintiffs have not identified facts establishing a violation of R.B.'s constitutional rights, their "claim for municipal liability cannot survive." *See Creger*, 2024 WL 124437, at *17. Accordingly, the Court grants Defendant Claiborne County summary judgment on this claim.

**D. Plaintiffs' Section 1983 Claim Against Defendant Sheriff Brooks Also Fails.**

The Complaint also asserts a Section 1983 claim for failure to train and supervise against Defendant Sheriff Brooks [Doc. 1 ¶¶ 66-86]. "[A] supervisory official's failure to supervise, control or train" is "not actionable [under Section 1983] **unless** the supervisor either encouraged the specific incident of misconduct or in some way directly participated in it." *See Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (citation omitted). "[A]t a minimum," a plaintiff must show that a supervisor "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (citation omitted). Plaintiffs have identified no facts establishing that Defendant Sheriff Brooks "implicitly authorized, approved, or knowingly acquiesced in" the conduct of any officer on November 8, 2020. In fact, Plaintiffs did

9

not separately analyze this claim in their response brief [*See* Doc. 94]. Accordingly, the Court grants Defendant Sheriff Brooks summary judgment on this claim.

> **E. To The Extent Plaintiffs Have Not Waived Their State Law Claims Against Certain Defendants, The Court Declines To Exercise Supplemental Jurisdiction Over The Remaining Claims.**

Plaintiffs "abandon[ed] their claims for . . . negligence against the County (Count Seven)," "intentional infliction of emotional distress against the County (Count 8)," and "loss of consortium (Count 9)" [Doc 94 at ii]. As such, Plaintiffs cannot proceed on these claims against the relevant Defendant(s). *See, e.g., Brown*, 545 F. App'x at 372. And the Court dismisses those claims with prejudice as to the relevant Defendant(s). Further, because the Court dismisses Plaintiffs' Section 1983 claims, the only claims on which this Court's original jurisdiction rests, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against any remaining Defendant and dismisses those claims without prejudice. *See Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022); *see also* 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

As set forth above, the Court **GRANTS** the motions for summary judgment of Defendants Deputy Ochoa, Claiborne County, and Sheriff Brooks [Docs. 68; 82] **IN PART.** And the Court **DISMISSES** with prejudice those state law claims Plaintiffs have abandoned. The Court **DECLINES** to exercise jurisdiction over Plaintiffs' remaining state law claims and **DISMISSES** those claims without prejudice. An appropriate judgment shall enter.

SO ORDERED.

_____
KATHERINE A. CRYTZER
United States District Judge